JUDGE DUVALL
delivered the opinion op tiie court:
In the year 1849 or 1850, Thomas Francis gave to Mrs. Ballard, (the appellee,) who was his daughter, a negro boy named Fayette. On the 12th September, 1850, Fayette was exchanged *33 for a negro woman named Sarah., and her boy child. The exchange was with John B. Francis, a brother of the appel-lee, but whether made or negotiated by the latter, or by her husband, or by both jointly, is not clear from the proof, and is immaterial. It is admitted that the following bill of sale was executed at the time of the exchange, by Francis, and delivered to Ballard, the husband:
“I have this day traded unto James D. Ballard a negro woman named Sarah, also a boy child, for and in consideration of one negro boy named Fayette. I warrant the girl Sarah sound at this time, in body and mind, and warrant her a slave for life. September 12, 1850. John B. Francis.
“ Test: L. E. Francis.”
In the month of July, 1856, the appellant became the purchaser of Zena, a son of Sarah, born since the year 1850, at a sale under an execution in favor of C. Field against Ballard and others, at the price of $315, which was paid by the appellant, and applied to the satisfaction of said execution.
In March, 1857, the appellee brought this suit against J. B. Francis, J. D. Ballard, her husband, and Shumate, the purchaser of the slave, alleging the foregoing facts, in substance, and that the bill of sale to her husband was made without her knowledge, approbation, or consent; that she had no knowledge of the existence of such bill of sale until a short time before the institution of the suit; that Shumate had unlawfully obtained the possession of the slave, and had refused to surrender him to her, and denied her right to the possession. She prays that Shumate be compelled to deliver up to her said slave, to pay hire, &c.
Shumate answered, denying any knowledge of Mrs. Ballard’s title or claim to the boy; claims to be the owner under his purchase, which he says was made by him in good faith, without notice of any right or claim on the part of the appel-lee, and insists that the title thus acquired by him is valid, and should be protected.
Upon the hearing, the circuit court rendered judgment directing the appellant- to surrender to the appellee the title and. *34 possession of the slave in contest, and for costs. To reverse that judgment this appeal is prosecuted.
That the bill of sale executed by Francis to Ballard invested the latter with the legal title to the slaves, Sarah and her children, is undoubtedly true, and is in effect conceded by the appellee, in the petition. Assuming, then, the truth of all the facts upon which she bases her equity — let it be conceded that Fayette was hers absolutely, under the gift from her father; that she negotiated the exchange with her brother without any agency on the part of her husband; and that the bill of sale to him was made without her knowledge, and against her wishes- — the question arises, what effect are these circumstances to have upon the title acquired by an innocent and bona fide purchaser, for full value, and without any knowledge of the circumstances mentioned, and, consequently, without notice of the claim, or equity, attempted to be founded upon them, especially after the lapse of more than six years from the date of the transaction, during the whole of which period the slaves remained in the possession of the husband, and by him claimed and controlled as his own ?
We are aware of no principle or authority upon which a latent equity, thus derived, can be allowed to prevail, even in favor of a married woman, against a party who has fairly acquired the legal title, and whose purchase has invested him with an equity at least equal to the one relied upon.
If the husband and wife had united in a sale of the boy Fay-ette, in the manner provided by the act of 1846, and if the proceeds of the sale had been invested by them in the purchase of other slaves, the title, as in this case, being made to the husband, a court of equity might possibly, on the ground of mistake, in such case regard the husband as trustee for the wife, so far as to compel the personal representatives of the former, upon his death, to surrender the slaves to the wife, as against the claim of his distributees. We would not, however, be understood as settling the principle even to this extent. But certainly the equity of the wife would not be recognized and upheld .as against the claims of innocent purchasers from the *35 husband, without notice, or of creditors. (Garret, &c., vs. Gault, 13 B. Mon., 380.)
The legislature certainly never could have contemplated that the protection afforded the meritorious class intended to be benefited by the act of 1846, should operate so injuriously to the just rights of another and not less meritorious class.
The judgment is therefore reversed, and the cause remanded with directions to dismiss the petition.